The opinion of the Court was delivered by
DáRGáN, Cu.
J. D. O. K. Pettus died 24th October, 1824, having duly executed his will, which bears date the 24th of March, 1819. The testator disposes of his whole estate in unequal proportions, in favor of his wife, Yiolet, and his two children then in esse: namely, Hannah, born in 1817, and Stephen, born in the year 1816. After the execution of the will, to wit, on the 16th May, 1821, John, another son, was born to the testator; for Avhom, as born after its execution, the will made no provision. As a pre-termitted child, (according to the rules of law upon the subject,) John is entitled to bo let into the possession and enjoyment of a portion of his father’s estate disposed of by the will. His share is to be raised by contributions from the legacies given to the other children; and in amount must equal the average of those legacies.
One Stephen Pettus became the administrator, with the will annexed, and on the 8th January, 1822, sold the whole estate, with the exception of two negroes, which were disposed of according to the bequests of the will. He made annual returns of his accounts with the estate, to the ordinary, for several years; in the last of which, made on the 5th January, 1829, the balance appearing against the administrator on account of his whole receipts and disbursements, is $288.96. The ordinary then gave him a certificate, thatthis sum was the balance due by him to his testator’s.estate. Yiolet Pettus, (the testator’s widow,) removed with her children to the State of North Carolina in 1822, where she continued to reside until her death in February, 1829. The children, and the heirs at law and distributees of those who are dead, have resided in that State ever since. There has been no administration upon the estate of Yio- *100 let Pottus. In 1845, Thomas Roswell, who had intermarried with Hannah Pettus, (the daughter of the testator,) cited Stephen Pettus, the administrator, before the ordinary to account; but the ordinary made no decree, and the proceedings had no result. Stephen Pettus, jr., and Hannah Roswell also died before the institution of this suit; and their representatives are parties to this bill, claiming an account of the administration of the testator’s estate. Stephen Pettus, sen., also died, (in 1846,) and Clawson, the defendant, is the administrator of his estate ; and resists the claim to account on various grounds; of which, those that are deemed material, will be hereafter considered. There has been a report upon the accounts from a special referee, (the Commissioner of the Court being the administrator of Stephen Pettus, senior.) Exceptions were taken to the report: and from the Chancellor’s decree upon the report and exceptions, an appeal has been brought before this Court.
I will not discuss the various grounds of appeal seriatim; but will confine my observations to such of the questions which they raise, as I deem proper for serious consideration.
The main issue involved in the case, is whether the parties who are seeking an account of the administration of the testator’s estate, are, under the circumstances of the case, entitled to an account at all. The original bill in the cause was filed May 14, 1847, by John Pettus, Thomas Roswell, and his ipfant daughter Mary V. Roswell, (a daughter of the testator’s legatee, Hannah Roswell,) all residents of North Carolina, against Wm. J. Claw-son, the administrator of Stephen Pettus, senior. And at a subsequent day, (not appearing to the Court,) a suppl mental bill was filed by J. C. Smith, as administrator of Hannah Roswell and Stephen Pottus, junior. This makes the record complete, as to the proper parties who should be before the Court.
Rut it will bo perceived, that from the date at which the administration was committed to the defendant’s intestate, more than the quarter of a century had passed away; and more than eighteen years had elapsed from the date of the last act of administra *101 tion, when Stephen Pettus, senior, made his last return to the ordinary, alid when that officer, on what purported to be a final settlement, struck a balance on his accounts, and gave him a certificate, that the sum of $288.96 was due by him to his testator’s estate.
I do not say, that this last accounting and settlement before the ordinary was a decree. I do not think it was. It was obviously ex parte, and cannot have, and probably was not intended to have, the force of a judgment. But it was a transaction which purported to be a final settlement of the estate. “ Acts done in a public office,” as the Chancellor in his decree has said, in an office proper for such acts, and where they may of right be done, and open at all times “ for the information of parties interested, must be taken notice of by them.” And the doctrine is fully sustained by the authority cited, (Payne vs. Harris, 3 Strob. Eq. 42;) to which others might be added. The Chancellor proceeds to say, <£ if Stephen Pettus’ return to the ordinary of January, 1829, had purported more clearly to be a full execution of the trust, the claims of all the plaintiffs might have been considered as barred by the statute of limitations, except that of John Pettus, saved by a day.” In the opinion of this Court, the Clranccllor did not give sufficient force and significancy tó the facts upon which the question as to the statute of limitations will turn. I regard those facts in a stronger light. They speak' an unequivocal language to the effect, that the administrator had wound up the estate, and had fully executed the trust, with the exception of the balance acknowledged to be due. In Brockington vs. Camlin, (4 Strob. Eq. 196,) whore the administrator had fully administered the estate, with the exception of some negroes, to which, in the presence of the distributees, ho asserted a personal and independent claim, the assertion of the claim was hold to have given currency to the statute. Suppose that in this instance, the administrator had served the parties in interest with a copy of his last account and return; or that he had given them notice in writing, or by parol, that he had fully executed his trust, with the exception of the *102 balance .acknowledged to be due, could it be doubted, that tbe effect would have been, to have divested him of his fiduciary character, except as to that balance, and to have placed him, to use the quaint but expressive language of some of the authorities, “ at arm’s length,” with the beneficiaries of the trust? Well; this, or a similar declaration, the administrator did spread upon the records of the ordinary’s office. And if there be any reason or force in the decisions, that acts done in a public office must be taken notice of by the parties interested, the same result must follow.
Independently of the statute of limitations, it apipears to me, that except as to the claim of John Pettus, the demand for an account is, under the circumstances, too stale and antiquated to meet with favor in this Court. It is against good policy to lend too ready an ear to an application to rip up these long standing settlements and accounts. The Court cannot proceed to render judgment, except at the risk of doing groat injustice. The transactions under investigation are obscured by the lapse of many years. The administrator is dead. He died under the belief, founded on what was undoubtedly a bona fide settlement before the ordinary, that he owed his testator’s estate only $288.96, with the subsequently accruing interest. His case has been defended by his own administrator, aided only by the evidence which the'-1 wreck of eighteen years leaves at his command. Under these circumstances his accounts have been examined, and on June 17, 1851, the referee reports a balance due by the estate of the administrator of J. D. O. K. Pettus of $4,268.10. This is a most startling result, and cannot but strongly impress one’s mind, with the danger of doing great injustice in these investigations. The case itself is aptly illustrative of both the benignity and wisdom of that rule, which affords to persons called upon for a settlement of stale and antiquated demands, the protection of a legal oblivion. It is the opinion of this Court, that the Chancellor should have sustained the plea of the statute of limitations, and dismissed the bill against all the complainants, except John Pettus. The case of John Pettus stands upon a different footing, as to *103 this ground of defence. He was an infant, and on account of his residence without the limits of this State, was entitled to fire years after he came of age to bring his suit. He filed his bill one day before the removal of his disability; which was of course sufficient to save his rights. The case must'go on as to him, and he will be entitled to recover such an amount as he would be entitled to recover if the claims of his co-plaintiffs had not been considered as barred.
There is only one other point which it is my purpose to discuss. The Chancellor, in his decree, has disallowed the charge of interest, except from the filing of the bill. He has conclusively shown, by the authorities which he has cited, that the allowance of interest is a matter within the discretion of the Court. Equity allows interest upon demands, as to which, interest is not recoverable at law; upon the principle, that it would be inequitable to withhold it; and in cases of trust, upon the maxim which prevails in this Court that a trustee shall not be permitted to make a profit for himself out of the trust estate. This Court having imposed upon itself rules for the allowance of interest on the ground that equity demands it, can refuse, and has refused it, where in the judgment of the Court, there are equitable ciccumstances which forbid its allowance. The equity for interest prevails, unless there he some stronger countervailing equity.' The authorities abundantly prove, that the allowance of interest in this Court is only a general rule; and that there are exceptional eases. It is a discretion belonging to the Court, however, which, in my judgment, if I may be allowed to use an expressive tautology, should be very discreetly exercised.
So far from impugning, I sustain the doctrine of the circuit decree in this respect considered as an abstract proposition. The claims^ set up on behalf of the representatives of Hannah Roswell, and Stephen Pettus, have been disposed of, and disallowed. If the claims on their part had not been considered as barred, and it were necessary to state an account ’as to them, I am not prepared to say, that it would not be proper, as the Chancellor decreed, to *104 withhold the interest, except from the time of filing the bill. In Smith vs. Hunt, (3 Eich. Eq. 465,) great laches on the part of the complainants in the prosecution of their demand for an account, until the interest account had swelled to a great and disproportionate magnitude, was held to be a sufficient reason for withholding a large portion of the interest. In reference to those parties, whose claims have been dismissed, this enquiry would be speculative, and outside of the record. But it is very material to enquire, whether under any circumstances, interest can be withheld from John Pettus, who was an infant, and who filed his bill for an account, within the five years allowed him by the statute of limitations after the removal of his disability. Laches is certainly not predicable of an infant before he attains his majority; nor is it imputable to him during the period, in which the statute afterwards allows him to bring his suit. There is no principle or precedent, so far as I can perceive, which forbids an interest account to be stated in favor of John Pettus. In stating the accounts, interest must be allowed according to the rules which prevail in this Court on that subject.
In regard to the other questions raised in the grounds of appeal, it is sufficient to say, that this Court concurs with the Chancellor, and is satisfied with the circuit decree.
It is ordered and decreed, that the bills be dismissed as to all the complainants in the cause, with the exception of John Pettus.
It is further ordered and decreed, that so much of the circuit decree, as disallows interest in favor of John Pettus be reversed, and that the referee, in re-stating the accounts, as is herein order-dered to be done, do charge interest on the administration accounts of Stephen Pettus, senior, according to the usual practice of this Court.
It is further ordorod and decreed, that the report be referred back to the special referee, and that he re-state the accounts, and make his report conformable with this decree, and with the circuit decree so far as the latter is not reversed or modified by this appeal decree.
*105 It is further ordered and decreed, that in all respects, in which the circuit'decree is not reversed or modified by this decree, the said circuit decree be affirmed, and the appeal dismissed.
JOHNSTON, Dunein and Wardlaw, CO., concurred.

Decree modified.